# IN THE COURT OF APPEALS OF IOWA

No. 20-1107
Filed November 4, 2020

**IN THE INTEREST OF R.H.,**
**Minor Child,**

**M.M., Mother,**
    Appellant,

**L.R., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Tama County, Casey D. Jones, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Deborah M. Skelton, Walford, for appellant mother.

Landon S. Small of McKelvie Law Office, Grinnell, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Geneva Williams of Williams Law Office, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., May, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VOGEL, Senior Judge.**

The mother and father of R.H., born in August 2019, separately appeal the termination of their parental rights. The mother unsuccessfully participated in multiple drug treatment programs, and the father has not participated in any services offered by the Iowa Department of Human Services (DHS). For those and other reasons more fully explained below, we affirm the termination of both parents' parental rights.

The family came to the attention of DHS in August 2019, just prior to R.H.'s birth, when the mother tested positive for methamphetamine. She admitted using the drug throughout her pregnancy. When R.H. left the hospital following his birth, he was placed in the care of his maternal grandmother. The mother agreed to a safety plan, which allowed the mother to reside in the same home with R.H. with the grandmother supervising contact between mother and child. The mother also agreed to participate in drug testing, enroll in various drug treatment programs, and address her mental-health issues. With the mother regressing far more than progressing and the father participating in absolutely none of the offered services, the State filed a petition to terminate both parents' rights on April 16, 2020. After a contested hearing with both parents testifying, the juvenile court granted the petition. The parents appeal.

We review termination proceedings de novo. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). A termination order will be upheld if there is clear and convincing evidence presented to support the grounds for termination under the Iowa Code. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

The father lists three issues on appeal: 1) the findings of facts do not meet the standard of clear and convincing evidence under Iowa Code section 232.116(1)(b), (e), and (h) (2020); 2) termination of his parental rights is not in R.H.'s best interests; and 3) the juvenile court should have provided him with additional time to achieve reunification with R.H. With no elaboration on any of these assertions, we do not know what the father takes issue with in the juvenile court ruling.

Iowa Rule of Appellate Procedure 6.201(1)(d) states, "The petition on appeal shall substantially comply with form 5 in rule 6.1401." Form 5, Paragraph 8 provides:

> State the legal issues presented for appeal, including a statement of how the issues arose and how they were preserved for appeal. Also, state what findings of fact or conclusions of law the district court made with which you disagree and why, generally referencing a particular part of the record, witnesses' testimony, or exhibits that support your position on appeal:
> *The issue statement should be concise in nature setting forth specific legal questions. General conclusions, such as "the trial court's ruling is not supported by law or the facts" are not acceptable. Include supporting legal authority for each issue raised, including authority contrary to appellant's case, if known.*

Although the petition on appeal is intended to be streamlined, *see In re L.M.*, 654 N.W.2d 502, 506 (Iowa 2002), the court on appeal must be provided with more than a simple assertion that the juvenile court was wrong. *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [appellant] might have made and then search for legal authority and comb the record for facts to support such arguments.").[1]

---

[1] Following the *Hyler* decision, we could simply conclude the father's issues are waived, but that may suggest the father's counsel was ineffective. We can see

But there is some evidence in the recitation of facts portion of the petition on appeal from which we can, on our de novo review of the record, draw the basis of the father's arguments on appeal. As noted in the petition, the father was in the hospital after R.H.'s birth, visiting several times before the child and the mother were discharged. The father claims he was simply hesitant to engage in services prior to the March 2020 confirmation of his paternity.

Because the father was presumed to be R.H.'s biological father even before the child's birth, the State served the father with notice of all proceedings beginning with the child-in-need-of-assistance (CINA) petition filed on September 20, 2019. DHS reached out to the father at the onset of the CINA case and on a regular basis thereafter in an attempt to engage the father in services. The father returned a few phone calls, but he refused to submit to drug testing or participate in any other services. He finally participated in a telephonic pretrial conference on May 20, 2020, after which he requested and was granted court-appointed counsel.

At the August 3, 2020 termination hearing, the father testified he was living with the mother when she learned she was pregnant, but he last saw the child shortly after his birth while he was still in the hospital. The father testified that although he wanted to co-parent D.H. with the mother, he was not "100 percent sure that [R.H.] was [his] son." As to DHS's efforts to engage him in services, the father admitted he had been "really hardheaded with DHS" and "hoping that this

_____

from the record, counsel represented the father well in the termination proceeding below, and on our de novo review we choose to address his issues raised on appeal. *See In re J.A.D.-F*, 776 N.W.2d 879, 884 (Iowa Ct. App. 2009) (determining that although forcing this court to divine what the parent believes supports the issues raised on appeal, we nonetheless give the appeal a de novo review).

would blow over." He testified he was now willing to submit to a substance-abuse evaluation, but he questioned how it was relevant. He also relayed his extensive criminal history of drug-related convictions, causing him to go "in and out of prison" over the course of many years. DHS's cause for concern stemmed from the mother's report that the father was an active methamphetamine user and that his home was not a healthy environment for the child. Having had no contact with R.H. since a few days after his birth and failing to participate in the many offers of services by DHS, the record does not support the father's position on appeal on any of his bare assertions that the grounds for termination have not been proven, that R.H.'s best interests are not served by termination, or that he should have additional time for reunification. *See* Iowa Code §§ 232.104(2)(b), 232.116(1)–(2). We affirm the juvenile court's termination of the father's parental rights.

We next consider the mother's issues on appeal, which are: 1) the evidence does not support terminating her parental rights under Iowa Code section 232.116(1)(h) and (*l*); 2) termination is not in R.H.'s best interests; and 3) the court should have ordered a guardianship as a permanency alternative to termination.

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Regarding section 232.116(1)(h),[2] the mother only challenges the findings as to the fourth

---

[2] Under section 232.116(1)(h), the court may terminate parental rights if it finds all of the following:

      (1) The child is three years of age or younger.

      (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

element, that the child cannot be returned to her custody at the present time. *See D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). Although the mother admitted in her testimony the child could not be returned to her at that time, she ties into her argument an assertion that DHS did not make reasonable efforts to facilitate a successful reunification. *See* Iowa Code § 232.102(7) (obligating the State to make reasonable efforts for return of the child to the parental home).

The mother left the grandmother's home in early October 2019, leaving R.H. in the grandmother's care. On October 23, R.H. was adjudicated in need of assistance. With the mother still living separately from R.H. and taking no responsibility for parenting, a removal order was entered on December 18, 2019. The grandmother was unable to contact the mother, and when the mother finally came home, the grandmother suspected the mother was "coming down" from drug use. The mother subsequently tested positive for methamphetamine in December 2019.

At a DHS family team meeting in February 2020, the mother was encouraged to take advantage of many reunification services. She soon checked herself into an inpatient substance-abuse treatment program, but she left after two days and failed to follow through with other treatment options. In April, the mother

---

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

entered another treatment program but left the following day. In May, the mother entered a third treatment program and tested positive for illegal substances upon entry. In her petition to us, she admits "she did not seriously address her mental health or substance abuse issues until she entered" this third treatment program. She remained in this program until July, when she was asked to leave after relapsing twice, testing positive for methamphetamine, and bringing methamphetamine onto the campus. She then entered yet another treatment program shortly before the termination hearing, but she was again discharged due to a behavioral problem.

On appeal, the mother points to a letter written by her counselor at the third treatment program. The letter outlines several areas of progress the mother made from early May until she relapsed and left the program in mid-July. However, as the juvenile court found, in recent months the mother has enrolled in multiple inpatient substance-abuse treatment programs, and she has left or been discharged from all with no sustained or appreciable progress. To prove her sincerity at her efforts to remedy her substance-abuse and mental-health issues, the mother renews her request for an additional six months to work toward reunification under Iowa Code section 232.104(2)(b), which requires the "court to make a determination the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). The juvenile court found it had given the mother "a substantial amount of time," beyond the required statutory time frame, "at the expense of permanency for [R.H.]." The record clearly shows DHS made consistent efforts to help the mother reunify with R.H., and nothing in the evidence supports finding the need for removal would no

longer exist after the extension of time. We therefore agree with the juvenile court's conclusions that clear and convincing evidence supports finding the child cannot be returned to the custody of the mother at the present time and additional time is not warranted.

Next, the mother claims it is not in R.H.'s best interests that her parental rights be terminated. In making a best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Throughout the juvenile court proceedings, the mother was without a permanent residence or a plan for safely caring for R.H. The grandmother has provided for R.H.'s daily needs almost since birth and is willing to adopt the child. As the Family Safety, Risk, and Permanency worker stated in her testimony, "I do feel like parental rights should be terminated to assure that [R.H.] has safe and sober caretakers that are able to provide for him." The juvenile court agreed, noting the child's future would be "uncertain" if forced to wait indefinitely for his mother to be in a position to be a safe placement for him. We agree.

Finally, the mother argues for a guardianship for R.H. as an alternative to termination. We note our case law makes it very clear that "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). The mother cites to Iowa's relatively new guardianship provisions, which provide for the juvenile court to retain jurisdiction of the case. *See* Iowa Code § 232D.103. We note new chapter 232D took effect January 1, 2020. *See* 2019 Iowa Acts ch. 56,

§§ 44, 45.  While chapter 232D provides many powers to the guardian, other powers require court approval, such as "denial of all visitation, communication or interaction between the minor and the parents of the minor."[3]  *See* Iowa Code § 232D.401(5).  The new code provisions do not change the preference in termination proceedings for promoting permanency over a guardianship.  We affirm the juvenile court's denial of granting a guardianship over termination of parental rights.

Having considered the arguments of both parents, we affirm the juvenile court.

**AFFIRMED ON BOTH APPEALS.**

---

[3] Iowa Code section 232D.401(5) provides:

The guardian shall obtain prior court approval for denial of all visitation, communication, or interaction between the minor and the parents of the minor.  The court shall approve such denial of visitation, communication, or interaction upon a showing by the guardian that significant physical or emotional harm to the minor has resulted or is likely to result to the minor from parental contact.  The guardian may place reasonable time, place, or manner restrictions on visitation, communication, or interaction between the minor and the minor's parents without prior court approval.